* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments of the parties. The appealing party has shown good ground to reconsider the evidence. Accordingly, the Full Commission reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * * RULING ON EVIDENTIARY MATTER
On June 12, 2005, defendant submitted a Motion to Reopen the Record to Admit Additional Evidence. Plaintiff submitted a Response to said Motion. Defendant's Motion is hereby DENIED.
 * * * * * * * * * * * *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction of this claim and subject matter.
2. At all times relevant to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. At the time of plaintiff's alleged injury of November 27, 2003, an employee-employer relationship existed between plaintiff and defendant.
4. On November 27, 2003, defendant was a duly qualified self-insured.
5. For the purposes of this hearing, plaintiff's average weekly wage was $775.38, which yields a compensation rate of $516.92. However, this determination is not binding upon either party, who may submit evidence at a later time to show the actual average weekly wage is higher or lower than this figure.
6. The following Industrial commission forms were submitted into evidence:
 a. Form No. 18 dated December 13, 2004.
 b. Form No. 33 dated February 7, 2005.
 c. Form No. 33R dated February 16, 2005.
 d. Form No. 61 dated February 16, 2005.
 e. Form No. 19 dated April 11, 2005.
7. The following medical records were submitted into evidence:
 a. Plaintiff's medical records identified as stipulated exhibit 1.
 *Page 3 
b. Long-term disability and short-term disability identified as stipulated exhibit 2.
 c. Documents noting plaintiff's contributions to long-term disability and short-term disability policies identified as stipulated exhibit 4.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 37 years old with a Nursing Degree from Liberty University.
2. As of November 27, 2003, plaintiff had worked for defendant for about two years. During the 52 weeks before November 27, 2003, plaintiff missed more than one month from work as a result of sinus infections. However, plaintiff had returned to her regular duties as of the date of the alleged injury.
3. On October 2, 1986, Dr. James Foster diagnosed plaintiff with congenital laxity of both ankles. Plaintiff testified that her congenital laxity predisposed her ankle to giving way.
4. In November 1989, plaintiff injured her left ankle in a motor vehicle accident and underwent an open reduction and internal fixation for a bimalleolar fracture.
5. On November 27, 2003, plaintiff was employed with defendant as a Staff Nurse. This job required her to perform routine nursing duties in the Neurosciences Unit, including but not limited to patient care, giving medication, changing linens, turning patients, monitoring vital signs, changing dressings, draining tubes, and bathing patients. *Page 4 
6. As part of her normal job duties, on November 27, 2003, plaintiff entered a patient's room in order to perform an assessment of the patient. Plaintiff testified at the hearing before the Deputy Commissioner that she entered Room 609 in the Neurosciences Unit, turned left to head towards the sink, and was startled by an individual standing behind a partially closed privacy curtain. As a result, she turned back to her left, twisted her left ankle, and grabbed a wall unit to keep from falling. Plaintiff testified that this particular room was different compared to any other room on the Unit because the bathroom was on the left hand side instead of the right hand side like the other rooms. Plaintiff testified that when she twisted her ankle, she heard a little pop but continued working because there was no pain. Later that evening, her ankle began tingling and that next morning she could barely walk on it.
7. The day following the incident, plaintiff reported to work and when the Nursing Unit Supervisor noticed her limping, plaintiff stated that her ankle was hurting. The supervisor sent plaintiff to the emergency room at the hospital. There is no indication that plaintiff explained to the supervisor how she injured her ankle.
8. In her interrogatory response dated April 14, 2005, plaintiff stated that on November 27, 2003, she twisted her ankle as she was walking into a patient's room. In her supplemental interrogatory response dated January 4, 2006, plaintiff indicated that the incident occurred in Room 608 and that she was startled by someone standing to her left behind a privacy curtain. At the hearing before the Deputy Commissioner, plaintiff repeatedly testified that the incident occurred in Room 609.
9. In direct contradiction to plaintiff's testimony, Kathy Ponder, Director of Neurosciences for Mission Hospital, testified that there were no and had never been any privacy curtains in any room in the Neurosciences Unit. Ms. Ponder further testified that Room 608 had *Page 5 
a sink on the left hand side and that Room 609 would have been the exact opposite, like a mirror image, with a sink on the right. She explained that the rooms were grouped in pairs with the bathrooms backing up to each other. Ms. Ponder also testified that neither of these rooms were peculiar or different from every other room in the Unit. This contradicts plaintiff's testimony that the room where the incident occurred, either Room 608 or 609 depending upon whether her interrogatory responses or her testimony is more accurate, was different and unique from any other room in the unit.
10. Ms. Ponder was shown pictures marked as Defendant's Exhibit 1, depicting Room 608. Ms. Ponder confirmed that the pictures showed no privacy curtain or curtain rod in the room.
11. Ms. Ponder was advised by plaintiff's supervisor that plaintiff had turned her ankle while walking, thereby re-injuring an old injury. Ms. Ponder was not informed that the incident was work-related.
12. Mary Silver, Workers' Compensation Administrator for Mission Hospital, manages the self-administered workers' compensation program for the hospital. She testified that when an employee is injured they are supposed to notify their supervisor, at which time an incident report is filled out and filed with the workers' compensation office. Ms. Silver never received an incident report related to plaintiff's alleged injury. In fact, it was not until she received the Form 18 filed on December 13, 2004, over a year after the incident occurred, that she received notice that plaintiff was filing a claim for workers' compensation. Ms. Silver was never contacted by any local medical facility requesting authorization for treatment of plaintiff under workers' compensation. *Page 6 
13. After treatment at the emergency room, plaintiff was referred to Dr. Joseph Dement, an orthopaedic surgeon. Plaintiff ultimately underwent surgery to remove the screws which had been placed in her left ankle in 1989. When plaintiff did not improve after the surgery, Dr. Dement recommended plaintiff see Dr. Peter Mangone for a second opinion.
14. Plaintiff began treating with Dr. Mangone on April 12, 1004. In a Comprehensive History Questionnaire completed on that date, plaintiff indicated that her injury was not work-related. Dr. Mangone diagnosed plaintiff with Reflex Sympathetic Dystrophy (hereinafter RSD) in her left foot and ankle, which he related to the twisting incident on November 27, 2003. Dr. Mangone continued to treat plaintiff until December 21, 2005. Dr. Mangone testified that someone with congenital laxity, like plaintiff, is at a higher risk of potentially twisting his or her joints than somebody who does not.
15. Plaintiff also sought treatment with Dr. Duncan Scott, who first saw plaintiff on June 16, 2004. Dr. Scott treated plaintiff's RSD with medications, a dorsal column stimulator, and intrathecal opioids. An intrathecal pump was permanently implanted on April 19, 2005. Dr. Scott opined that the twisting incident on November 27, 2003 and subsequent medical care led to plaintiff's RSD. As of the date of his deposition, Dr. Scott had not yet released plaintiff to return to work but opined that she may be capable of sedentary work.
16. Plaintiff presented to Dr. Terence Fitzgerald on November 24, 2004 on referral from Dr. Scott to determine whether plaintiff was a statistically appropriate candidate for a dorsal column stimulator due to plaintiff's chronic left ankle pain. Dr. Fitzgerald confirmed at his deposition that his medical record from plaintiff's visit on November 24, 2004 notes that this was not a workers' compensation or disability case. The medical record also notes that plaintiff *Page 7 
stated she twisted her ankle and fell. It was not until January 5, 2005, that plaintiff mentioned to Dr. Fitzgerald that she turned her left ankle on entering a patient's room.
17. Plaintiff completed a Form 18 on December 13, 2004 alleging an injury to her left foot, ankle, and leg on November 27, 2003 when she turned/twisted her ankle while walking into a patient's room. Plaintiff never notified defendant that her injury was related to work prior to her filing the Form 18. Plaintiff testified that she attempted to contact someone named Bonnie at defendant's workers' compensation office three times but no one called her back so she gave up trying to report her injury. Ms. Silvers testified that no one named Bonnie has ever worked in the workers' compensation office and that to her knowledge plaintiff never contacted her office to report an injury.
18. Taking into consideration plaintiff's inconsistent statements regarding the incident, the testimony of Ms. Ponder indicating that there were no privacy curtains in the Unit plaintiff was working in on November 27, 2003, the exhibits introduced by defendants showing the absence of privacy curtains in Room 608, and plaintiff's failure to promptly, if at all, notify her medical providers that her injury was related to a workplace incident, the Full Commission finds plaintiff's testimony not credible.
19. By the greater weight of the competent, credible evidence of record, the Full Commission finds that plaintiff has not shown that on November 27, 2003, she was startled by someone partially hidden behind a privacy curtain which caused her to twist her left ankle resulting in an injury.
20. By the greater weight of the competent, credible evidence of record, the Full Commission also finds that plaintiff did not give written notice of the alleged November 27, 2003 incident to defendant until approximately December 13, 2004. Plaintiff has not shown that *Page 8 
defendant had actual knowledge of said alleged incident, and/or that she had a reasonable excuse for not giving written notice to defendant.
21. The undersigned also find that defendant was prejudiced by not receiving timely notice of plaintiff's workers' compensation claim, in that they were unable to investigate plaintiff's claim in a prompt fashion and lost their right to direct plaintiff's significant medical treatment in a reasonable fashion.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6). Plaintiff has the burden of proving that the injury complained of resulted from an injury by accident arising out of and in the course of the employment.Henry v. A.C. Lawrence Leather Co., 231 N.C. 477, 57 S.E.2d 760 (1950). Plaintiff must show that the incident constituted an interruption of the routine of work and the introduction thereby of unusual conditions likely to result in unexpected consequences. Adams v. BurlingtonIndustries, Inc., 61 N.C. App. 258, 300 S.E.2d 455 (1983). An accident is an unlooked for and untoward event not expected or designed by the employee. An accident is not established by the mere fact of injury but is to be considered as a separate event preceding and causing the injury. No matter how great the injury, if it is caused by an event that involved both an employee's normal work routine and normal working conditions it will not be considered to have been caused by accident.Searsey v. Perry M. Alexander Construction Co., 35 N.C. App. 78,239 S.E.2d 847 (1978). In *Page 9 
the case at bar, plaintiff's testimony that she was startled by someone standing to the left, partially hidden behind a privacy curtain is deemed not credible. As such, when plaintiff entered the room to perform her usual job duties on November 27, 2003, she did not experience an unlooked for or untoward event. As such, plaintiff has not shown that the incident of November 27, 2003 was an accident. Id.
2. Further, plaintiff has failed to show that she provided written notice to defendant within 30 days of the occurrence of the November 27, 2003 incident or that defendant had actual knowledge of such incident, and/or that she had a reasonable excuse for not giving written notice. Defendant was prejudiced by this failure to provide notice and, therefore, plaintiff is not entitled to any compensation for the November 27, 2003 incident. N.C. Gen. Stat. § 97-22.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Plaintiff's claim for an injury by accident on November 27, 2003 is hereby denied.
2. Each side shall bear its own costs.
This the 12th day of September 2007.
 S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 10 
CONCURRING:
 S/___________________ BUCK LATTIMORE COMMISSIONER
DISSENTING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 11